IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON ROBERT F.,[1]                          3:20-cv-00201-BR

              Plaintiff,                     OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

KEVIN KERR
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

          Attorneys for Plaintiff

SCOTT ASPHAUG
Acting United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**KATHERINE B. WATSON**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2139

        Attorneys for Defendant


**BROWN, Senior Judge.**

        Plaintiff Jason Robert F. seeks judicial review of a final
decision of the Commissioner of the Social Security
Administration (SSA) in which he denied Plaintiff's applications
for Disability Insurance Benefits (DIB) and Supplemental Security
Income (SSI) under Titles II and XVI of the Social Security Act.
This Court has jurisdiction to review the Commissioner's final
decision pursuant to 42 U.S.C. § 405(g).

        For the reasons that follow, the Court **AFFIRMS** the decision
of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

        Plaintiff filed applications for DIB and SSI on April 26,
2016, alleging a disability onset date of April 30, 2008.
Tr. 234, 238.[1]  The application was denied initially and on
reconsideration.  An Administrative Law Judge (ALJ) held a

_____

        [1] Citations to the official transcript of record filed by
the Commissioner on September 15, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

hearing on April 30, 2018, and a supplemental hearing on October 3, 2018.  Tr. 13-47, 48-70.  Plaintiff was represented by an attorney at both hearings.  At the initial hearing Plaintiff amended his alleged onset date to December 31, 2012, and Plaintiff and a vocational expert (VE) testified.  At the supplemental hearing Plaintiff and a medical expert testified.

The ALJ issued a decision on December 28, 2018, in which she found Plaintiff is not disabled, and, therefore, Plaintiff is not entitled to benefits.  On December 4, 2019, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on April 17, 1973, and was 45 years old at the time of both hearings.  Tr. 234.  Plaintiff has a college degree.  Tr. 127.  The ALJ found "the record does not contain sufficient evidence about [Plaintiff's] past relevant work to make a finding at the fourth step."  Tr. 132.

Plaintiff alleges disability due to "multiple back surgeries; botched back surgery; difficulty moving, standing, sitting, walking; sciatic nerve pain in both legs; discogenic pain in all 4 limbs, neck and back; HEP; bad headaches; [and] problems sleeping due to pain."  Tr. 96.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 128-31.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might

accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## <u>DISABILITY ANALYSIS</u>

## I.   **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

regular and continuing basis despite his limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule." SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the
burden shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th
Cir. 2010).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),

416.920(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after his December 31, 2012, amended alleged onset date.  Tr. 124.

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative disc disease, fibromyalgia, and kidney disease.  Tr. 125.  The ALJ found Plaintiff's impairment of depression is not severe.  Tr. 125.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments during the relevant period do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 126.  The ALJ found Plaintiff has the RFC to perform sedentary work except:

> [Plaintiff] can occasionally climb ramps and stairs but never climb ladder[s], ropes or scaffolds.  [Plaintiff] can occasionally balance, stoop, kneel, crouch and crawl.  [Plaintiff] can occasionally reach overhead and can frequently reach in all other directions.  [Plaintiff] should not have concentrated exposure to extreme temperatures, vibration, pulmonary irritants, or hazards.

Tr. 126.

At Step Four the ALJ concluded "the record does not contain sufficient evidence about [Plaintiff's] past relevant work to make a finding at the fourth step.  Therefore, the undersigned

proceeds to the fifth step of the sequential evaluation process without making a finding in terms of the claimant's past relevant work." Tr. 132.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 132. Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) partially rejected the opinion of Howard Shapiro, M.D., reviewing physician; and (3) found at Step Five that Plaintiff can perform jobs that exist in significant numbers in the national economy.

**I.   The ALJ did not err when she partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.  The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment

9 - OPINION AND ORDER

could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

At the first hearing Plaintiff testified he suffers from back pain and his "entire spine gets extremely stiff, very fast." Tr. 33. Plaintiff also stated he has "been getting terrible headaches for the last five years." Tr. 30. His headaches can be "atrocious," "come in waves," and "go on for hours." Tr. 30. Plaintiff testified he stopped working in April 2008 because he

was "sneaking out [of work] early, like around 3:00/3:30 [due to extreme pain,] . . . [he] got caught[,] and they resigned [him]." Tr. 33.  Plaintiff noted "by the end of the afternoon . . . [he] couldn't be [at work]" because of his "extreme pain."  Tr. 33. Plaintiff testified he worked as a Lyft driver "two or three hours" at a time for about fifteen hours per week.  Tr. 23-24. Plaintiff stated the "biggest barrier to increasing that to a full-time workload" was his back pain that "comes in waves." Tr. 34.  When he "overwork[s], and [the pain] hits [him], it takes [him] down for a while."  Tr. 34.  Plaintiff stated he also cannot "travel very well."  Tr. 30.  Plaintiff noted he had "not really been getting any treatment" for his back other than doing Feldenkrais exercises, which is "a form of yoga," since 2011. Tr. 35.  Plaintiff stated he "wasn't sure" why he has not tried any kind of steroid injections, but his doctors had not "suggested those."  Tr. 36.

At the second hearing Plaintiff testified he continued to drive for Lyft "between 10 and 15 hours a week."  Tr. 64-65. Plaintiff noted, however, his symptoms had become worse since the first hearing.  Plaintiff stated his "symptoms are moving more into [his] neck, which is causing headaches and sleeplessness," and "those symptoms make everything less dealable, as far as being really tired."  Tr. 67.  Plaintiff noted at times he is "forced out of bed" by stiffness, headaches, and "acute pain."

Tr. 67.

Although the ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms," Plaintiff's statements "concerning the intensity,
persistence and limiting effects of these symptoms are not
entirely consistent with the medical evidence and other evidence
in the record." Tr. 128. The ALJ noted Plaintiff has had only
conservative treatment. In fact, the record reflects Plaintiff
did not undergo any treatment from December 31, 2012, through
January 2017 other than a single consultative examination in
August 2016. Tr. 129, 429, 536. In addition, although Plaintiff
stated he does Feldenkrais exercises, the record does not reflect
Plaintiff received any treatment that included Feldenkrais
exercises. Moreover, Plaintiff did not follow through with
treatment referrals or recommendations. For example, Plaintiff
attended one physical-therapy session in March 2017, but he did
not continue because he "felt that one appointment was
exacerbating his symptoms." Tr. 518. Instead Plaintiff
"continued with Feldenkrais method." Tr. 518. Similarly, on
April 13, 2018, Steven Day, M.D., treating neurologist, noted he
was "unable to provide a neurological explanation for
[Plaintiff's] diffuse chronic pain," and he did not have "any
additional recommendations in terms of workup or evaluation."
Tr. 586. Plaintiff requested a second opinion and his treating

12 - OPINION AND ORDER

physician, Ann Valente, M.D., referred him to "[t]he Oregon Clinic or OHSU Neurology (depending on insurance approval) for a second opinion."  Tr. 641.  Plaintiff, however, did not follow through with these referrals.  At the first hearing the ALJ asked Plaintiff about the lack of treatment, and Plaintiff responded he was not sure why he had not had other treatment.

The record also reflects Plaintiff declined prescription medications to treat his pain.  Tr. 509 (Plaintiff declined flexeril or "high-dose NSAIDS"), Tr. 532 ("Discussed start of SNRI like Cymbalta, pt prefers to stay away from medications for now.").  *See also Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018)("Although Social Security Ruling 96-7 . . . provides an ALJ 'must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide,' [here the plaintiff] fails to provide any explanation for her treatment noncompliance.").

The ALJ also noted imaging reports do not support Plaintiff's testimony.  For example, Dr. Day reported in January 2018 that Plaintiff's 2007 MRI "identified some spondylosis of his lumbar spine . . . which might explain some lumbar mechanical pain but otherwise his symptoms remain unexplained."  Tr. 485.  After Plaintiff underwent an x-ray of his cervical spine and MRIs

of his thoracic and cervical spine in February and March 2018,
Dr. Day noted Plaintiff's "spinal imaging has identified
spondylitic changes which certainly could explain some degree of
his spinal pain but the findings do not explain his more diffuse
myalgias and neuropathic pains.  Notably, visualized muscles do
not have the appearance of a myopathy or myositis."  Tr. 558.
Plaintiff underwent electrodiagnostic testing in April 2018,
after which Dr. Day concluded Plaintiff "has radiographic
evidence of spondylosis of his spine which may be contributing to
his mid line axial pain[,] however[, it] does not explain his
diffuse symptoms.  Overall I am unable to provide a neurological
explanation for his diffuse chronic pain and I have no additional
recommendations in terms of workup or evaluation."  Tr. 586.

   The Court concludes on this record that the ALJ did not err
when she partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of his symptoms
during the relevant period because the ALJ provided clear and
convincing reasons supported by substantial evidence in the
record for doing so.

**II.  The ALJ did not err when she partially rejected
     Dr. Shapiro's opinion.**

   Plaintiff asserts the ALJ erred when she partially rejected
the opinion of Dr. Shapiro, reviewing physician.

   A nonexamining physician is one who neither examines nor
treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a

14 - OPINION AND ORDER

nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

Dr. Shaprio testified as a medical expert at the second hearing.  Dr. Shapiro noted he reviewed Plaintiff's medical record and concluded Plaintiff suffered from several "unrelated problems":

> [L]ow hypothyroidism; he has high blood pressure; he has a modest degree of kidney disease.  He also has fibromyalgia, and he has a decline of an injury from 2002.  And then this . . . injury has resulted, apparently, in mild involved [*sic*] in his cervical spine.  And he has problems with lower back pain, with his herniated disc, at T12, in [2001].  He also had an [INAUDIBLE] at L5 and S1.  And then he had surgery, for the latter problem, in 2004, and couldn't do much because of pain and his symptoms.  And now, [he has] had a variety of treatment, and as was mentioned by his advocate, treatment of more than two years of the commonplace treatment, and those have afforded him some measure of improvement.  However, the problems remain.  New conduction studies have been normal.  Impression turns up as whether or not could reflect [*sic*].  But historically, this appears to be 1.04C.  Going over to that, to 2002,

and so I think that this gentleman meets that
listing.

Tr. 57-58.  The ALJ asked Dr. Shapiro what, if any, functional

limitations Dr. Shapiro "would find [to be] appropriate" as to

Plaintiff's ability to stand, walk, lift, and bend.  Tr. 61.  The

ALJ then engaged in the following exchange with Dr. Shapiro:

> [Dr. Shapiro]:  I think that he has sufficient, at
>                 least, subjective disability; that
>                 he really is not employable.
>
> [ALJ]:          And what do you mean by subjective
>                 disability?
>
> [Dr. Shapiro]:  Well, the pain persists.

Tr. 61.  Ultimately Dr. Shapiro stated he believed Plaintiff

> can stand for one hour at a time, and for two
> hours in a day; he can walk for a half-an-hour at
> a time, and one hour in a day; and he can sit for
> two hours at a time, and four hours in a day.  And
> I think that he's able to lift 20 pounds
> occasionally and 10 pounds frequently; could carry
> those same amounts.  I think that he is -- has no
> difficulty with hand movement or grasp or fine
> movement, with either hand.  He is able to reach
> to a level of his shoulders, but not above his
> shoulders.  He's not able to go up on ladders or
> scaffolding.  He's not able to be at unprotected
> heights or to be with machinery; or to walk on
> uneven ground. . . .  [I]n terms of ability to
> walk on ramps or a few steps, yes, he can.  In
> terms of environmental limitations, he has none.
> And in terms of his ability to assume postures,
> he's able to bend, occasionally.  He's not able to
> stoop, to kneel, or to crawl.

Tr. 62.  Plaintiff's counsel asked Dr. Shapiro whether he

believed Plaintiff would miss two or more days of work per month

due to pain, and Dr. Shapiro responded Plaintiff "would not be

16 - OPINION AND ORDER

able to work, on the basis of his symptoms of pain."  Tr. 63.

The ALJ gave "little weight" to Dr. Shapiro's assessment
that Plaintiff meets Listing 1.04C.[2]  The ALJ, however, gave
"some weight" to Dr. Shapiro's "overall assessment of
[Plaintiff's] standing, walking, lifting and carrying
restrictions that seem consistent with sedentary exertional
work," but the ALJ found "Dr. Shapiro overstate[d] [Plaintiff's]
postural limitations."  Tr. 130.

The ALJ also noted Dr. Shapiro's assessment regarding
Plaintiff's limitations in standing, walking, lifting, and
carrying were inconsistent with the results of Plaintiff's MRIs
and x-rays as well as the relatively benign objective
examinations.  For example, although Plaintiff's examinations
reflected he had reduced range of motion, they also reflected he
had full strength, normal gait, and no neurological deficits.
*See, e.g.,* Tr. 391, 429-30, 440, 477, 484-85, 514, 519, 525, 689.
In addition, although Dr. Shapiro stated Plaintiff could "walk
. . . up a few steps" and should never walk on uneven surfaces,
stoop, kneel, or crawl, the record reflects Dr. Valente
recommended in January 2017 that Plaintiff "increase aerobic
exercise to 150 minutes a week.  Try taking the Alameda Steps
trail."  Tr. 538.  In addition, the ALJ noted Feldenkrais

---

[2]  Plaintiff does not challenge the ALJ's finding regarding
Dr. Shapiro's opinion as to Listing 1.04.

exercises include stooping, kneeling, and crawling positions.

The Court concludes on this record that the ALJ did not err when she partially rejected Dr. Shapiro's opinion because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**III. The ALJ's partial error at Step Five was harmless.**

Plaintiff asserts the ALJ erred at Step Five when she found Plaintiff can perform jobs that exist in significant numbers in the national economy.

As noted, if the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ found Plaintiff could perform the jobs of Addresser, Charge-Account Clerk, and Elections Clerk.  Plaintiff asserts the

ALJ erred when he reached those conclusions because the job of
Addresser is obsolete, there are not enough Charge-Account Clerk
jobs in the national economy to constitute a "significant
number," and the record is unclear as to whether the job of
Elections Clerk is "regular and continuing."

### A.    Addresser Job

At the first hearing the VE testified an individual
with Plaintiff's limitations could perform the job of Addresser,
which has approximately 6,000 jobs nationally.  The VE relied on
the Dictionary of Occupational Titles (DOT) and his "thirty years
as a rehab counselor [and] 15 [years] as an employer."  Tr. 40,
42.  The ALJ, relying on the VE's testimony, found Plaintiff
could perform the job of Addresser.  The DOT defines the job of
Addresser as follows:  "Addresses by hand or typewriter,
envelopes, cards, advertising literature, packages, and similar
items for mailing.  May sort mail."  DOT 209.587-010.  As noted,
Plaintiff asserts the ALJ erred when he reached that conclusion
because courts have found the Addresser job is obsolete.  As one
court explained:

> Plaintiff contends that the job of addresser is
> obsolete.  While the VE testified that there were
> 8,000 of these positions nationally, the SSA in
> May 2011 has found that the job was obsolete and
> did not exist in sufficient numbers in the
> national economy.  *Id.; see also* Mark Trepani &
> Deborah Harkin, Soc. Sec. Admin., Occupational and
> Medical-Vocational Claims Review Study at 7 (May
> 2011)(identifying jobs that "[i]t is doubtful
> . . . currently exist in significant numbers in

our economy"). Defendant responds that the Ninth
Circuit found in *Gallo v. Comm'r of Soc. Sec.
Admin.*, an unpublished decision, that the ALJ was
"entitled to rely on the VE's testimony that the
Addresser job exists in significant numbers in the
national economy." 449 Fed. App'x 648, 650 (9ᵗʰ
Cir. 2011).

*Gallo* is not binding on the Court, and the Court
finds the district court's reasoning in *Skinner v.
Berryhill* more persuasive. No. CV 17-3795-PLA,
2018 WL 1631275 (C.D. Cal. Apr. 2, 2018). There,
the court explained that "it is not unreasonable
to assume that the occupation of 'addresser,'
which – as described by the DOT – provides for
addressing envelopes by hand or by typewriter, is
an occupation that has significantly dwindled in
number since 1991 in light of technological
advances." *Id.*, at *6. Thus, "a reasonable mind
would not accept the VE's testimony that there are
over 3,000 such positions in the region of
California alone, or even that there are over
10,000 in the national economy." *Id.* The *Skinner*
court also pointed to the SSA's May 2011 study as
"cast[ing] additional doubt on the reliability and
credibility of the VE's testimony and on the ALJ's
conclusion that 'addresser' jobs exist in
significant numbers." *Id.* Further, *Skinner*
specifically addressed *Gallo*, noting that there,
the plaintiff had not provided any evidence in
support of the argument that the addresser job did
not exist in significant numbers. *Id.*, at *7. In
contrast, the *Skinner* plaintiff had provided the
court with such evidence, including the May 2011
study. *Id.*

*Bazan v. Berryhill*, No. 18-CV-01224-KAW, 2019 WL 4751874, at *8

(N.D. Cal. Sept. 30, 2019). *See also Candice E. v. Berryhill*,

No. 6:18-CV-01261-YY, 2019 WL 2550318, at *5 (D. Or. June 20,

2019)(finding ALJ "erred in relying on the VE's testimony that

plaintiff could perform the job[] of addresser" because that job

is obsolete); *Skinner v. Berryhill*, No. CV 17-3795-PLA, 2018 WL

1631275, at *5-6 (C.D. Cal. Apr. 2, 2018)(same); *Scott v. Colvin*, No. 14-cv-04051-EDL, 2015 WL 11438598, at *13 (N.D. Cal. Dec. 9, 2015)(same); *Burney v. Berryhill*, 276 F. Supp. 3d 496, 500 (E.D.N.C. 2017).

The Court finds *Bazan, Skinner,* and *Candice E.* to be well-reasoned and adopts that reasoning.  Accordingly, the Court concludes the job of Addresser is obsolete, and, therefore, the ALJ erred at Step Five when she found that job exists in significant numbers in the national economy.

### B.    Charge-Account Clerk

At the first hearing the VE testified an individual with Plaintiff's limitations could perform the job of Charge-Account Clerk, which has 1,500 jobs nationally.  Plaintiff asserts 1,500 jobs is not a "significant number" of jobs and, therefore, the ALJ erred when she concluded Plaintiff is not disabled because he could perform that job.

42 U.S.C. § 423(d)(2)(A) provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy. . . .  [W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Citation omitted.  Although the Ninth Circuit has "never set out

a bright-line rule for what constitutes a 'significant number' of jobs," a "comparison to other cases is instructive." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  In *Beltran* the Ninth Circuit noted it has held "an ALJ erred in finding a significant number of jobs where the jobs were 'very rare' or generally unavailable to the claimant due to his limitations." *Id.* at 389 (quoting *Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir. 1976)). The Ninth Circuit concluded in *Beltran* that "this is precisely the situation in Beltran's case.  The ALJ found that there existed only 135 jobs regionally or 1,680 jobs nationally that [the plaintiff] could perform." *Beltran*, 700 F.3d at 389.  The court, therefore, concluded the ALJ erred when he found the plaintiff could perform a significant number of jobs in the national economy. *Id*. at 390.  In *De Rivera v. Berryhill*, 710 F. App'x 768, 769 (9th Cir. 2018), the VE testified there were "approximately . . . 5,000 [conveyor-line bakery worker] jobs nationally."  The Ninth Circuit concluded "[a]lthough we have never set out a bright-line rule for what constitutes a significant number of jobs, it is not clear that these amounts are sufficient." *Id*. (quotations omitted).  In *Gutierrez v. Commissioner of Social Security* the Ninth Circuit concluded "the ALJ's finding that 25,000 national jobs is sufficient presents a close call," but ultimately the court concluded this was a significant number of jobs and satisfied the Commissioner's

burden at Step Five.   740 F.3d 518, 528-29 (9ᵗʰ Cir. 2014).

The Court notes the Ninth Circuit concluded in *Beltran* that 1,500 jobs nationally is insufficient, and 1,500 jobs is less than one-third of the number of jobs that the Ninth Circuit found to be insufficient in *De Rivera*.   The Court, therefore, concludes the ALJ erred at Step Five when she concluded the job of Charge-Account Clerk exists in significant numbers in the national economy.

**C.    Elections Clerk**

At the first hearing the VE testified an individual with Plaintiff's limitations could perform the job of Elections Clerk, which has 210,000 jobs nationally.   Plaintiff's counsel then engaged in the following exchange with the VE:

> BY THE ATTORNEY:
>
> Q.    With regard to elections clerk and the job numbers with regard to that, would you not agree that an elections clerk position, the job numbers would, at the very least, fluctuate throughout the course of the year?
>
> A.    No, those are full-time jobs, the numbers I gave you.
>
> Q.    Could you describe what an elections clerk would do outside of an elections season?
>
> A.    Election offices are open every day, everywhere.   They help people sign up for voting; they ask questions about different situations regarding pamphlets; voting, voting areas.   That's basically it.
>
> Q.    So you're saying that that's not seasonal, essentially?

> A.   I am saying those numbers I gave you are
> . . . for full-time work only, Counsel.

Tr. 43.

Plaintiff asserts the ALJ erred when she relied on the VE's testimony as to the  Elections-Clerk job because the VE did not "directly answer whether the number of elections clerk jobs would fluctuate throughout the course of the year."  Pl.'s Br. at 19.  Plaintiff notes although the VE testified the job numbers he provided were for "full-time work only," the question is not whether the job is full-time, but instead whether it is regular and continuing.  Plaintiff relies on *De Perez v. Comm'r*, No. 1:17 CV-00404-JDP, 2018 WL 3473967, at *7 (E.D. Cal. July 18, 2018), to support his position.

In *De Perez* the VE testified the plaintiff could perform the job of Elections Clerk.  The plaintiff asserted the ALJ erred when he relied on the VE's testimony because the DOT defines the job of Elections Clerk as one in which a person performs "any combination of the following duties during elections."  DOT 205.367-030.  The plaintiff asserted "work that occurs during elections differs from work occurring on a regular and continuing basis, and so an apparent conflict existed between the VE's testimony and the DOT that the ALJ had a duty to resolve."  *De Perez*, 2018 WL 3473967, at *7.  The court

> agree[d] . . . the DOT's description of an
> election clerk, which references work occurring
> "during elections," appears to portray a position

24 - OPINION AND ORDER

> that is not "regular and continuing."  An apparent
> conflict thus existed between the VE's testimony
> and the DOT, and the ALJ had a duty to request a
> reasonable explanation from the VE for this
> conflict before relying on the VE's testimony to
> support his conclusion that De Perez is not
> disabled.

*Id.*

Here, however, unlike in *De Perez,* the VE explained the apparent conflict between the VE's testimony and the DOT. Specifically, the VE responded to counsel's question "Could you describe what an elections clerk would do outside of an elections season?" and noted "[e]lection offices are open every day, everywhere.  They help people sign up for voting; they ask questions about different situations regarding pamphlets; voting; voting areas."  The Court concludes this testimony, in combination with the VE's statement that the numbers he provided were for full-time work, is sufficient to resolve any apparent conflict between the VE's testimony and the DOT.  The Court, therefore, concludes the ALJ did not err when she found Plaintiff could do work that exists in significant numbers in the national economy as an Elections Clerk.

Accordingly, the Court concludes on this record that the ALJ erred in part at Step Five, but that the error was harmless because the ALJ concluded Plaintiff can perform the job of Elections Clerk, which exists in significant numbers in the national economy.

**<u>CONCLUSION</u>**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 16th day of March, 2021.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge

26 - OPINION AND ORDER